*Supreme Court, August,* 1820.

The People
    *vs.*          }  *On Habeas Corpus—Motion to Bail.*
Robert M. Goodwin.

*Spencer, Ch. J.*—" The return of the writ sets forth the Statement of causes of detention ; but it has been admitted that the the case. prisoner is to be considered as detained only on a charge of manslaughter. It appears that he has been indicted for that offence, and has been brought to bail in the sessions in this city : that the trial was continued for five days, and that the jury after having had the cause under consideration for about twenty hours were finally discharged by the court ; the jury declaring it as their unanimous opinion that there was no expectation of their being able to agree. It appears that after the jury had been out about seventeen hours, they came into court, and by their foreman, declared themselves agreed on their verdict, and that they found the prisoner guilty, and recommended him

NEW-YORK,    to the mercy of the court ; but on being polled, the third
juror dissented from their verdict.

" The District Attorney avowed his readiness to proceed
to trial again in the sessions within two days ; but stated
that if it was the wish of the prisoner, he would remove
the indictment and proceedings by *certiorari* into the Su-
preme Court. The prisoner's counsel declared their de-
sire that the certiorari should issue ; and also stated it to
be their intention to insist before that court, that the
prisoner could not be tried again for the same offence,
the jury having been discharged without their consent.
These are all the facts to guide my discretion in determin-
ing the question, whether the prisoner is entitled to be
bailed or not. And in deciding this question, little or no
aid can be derived from the course of proceedings in this
state ; the point has never been discussed or decided at
the bar, and the proceeding before the judges at chambers
have never been collected or preserved.

" With regard to the power of a judge of the Supreme
Court to allow the writ of habeas corpus ad subjicien-
dum in cases not within the 31st Charles 2. ch. 2.(of which
our statute is nearly a transcript)and to bail ; the counsel
for the prosecution distinctly admitted the existence of
such a power.

Power of the      " But I am unwilling it should rest on admission.—The opin-
judges to is-    ion of the twelve judges in England, on questions pro-
sue and in-
quire   upon   pounded to them by the House of Lords in 1757 is the
the return of   best and highest evidence of the power. And as I under-
writs of habe-
as corpus.    stand their opinions, which will be found in Gwillim's
Bacon, tit. Habeas Corpus, they were unanimously of opin-
ion, that since the statute of 31 Charles 2. ch. 2. and as
the law then stood upon the practice of the King's Bench

writs of habeas corpus ad subjiciendum might issue in all cases by a fiat from a judge of the king's bench, returnable before himself. Seven of the judges are explicit on the question, that the power of a judge of the king's bench in awarding the writ, extends to all cases not within the statute. The doubts which have been entertained, whether on the return of the writ, the judge was not bound by the return, so that the facts and circumstances of the case were not examinable beyond the return, have been removed by the act amending the *habeas corpus* act passed the 21st of April, 1818 : and it cannot now be doubted, that a judge in vacation may examine into the facts contained in the return, into the cause of the confinement and restraint.

" Manslaughter is felony, and it is punishable, on conviction, by imprisonment in the state prison for a term not less than three years, nor more than fourteen years. And it has been argued that it being a felony thus punishable, it is a case in which the party accused ought not to be bailed unless it be shown that there is a strong presumption of innocence. I am satisfied that the prisoner cannot demand it as a matter of right, to be admitted to bail, and that it is a question resting in the sound legal discretion of the judge awarding the writ.

*Question of bail upon, rests in the sound discretion of the judge awarding the writ.*

" Hawk. b. 2. ch. 15. § 40—50. lays down the law to be that if it stands indifferent whether a person charged with a felony is guilty or not, he ought to be bailed ; and that even in capital cases, where there is any circumstance to induce the court to suppose he may be innocent, they will bail; and that the judges will in general exercise the power of bailing in favor of a prisoner in every case not capital, though they will not exercise it when the prisoner

*When the court will bail, and when not.*

NEW-YORK, is notoriously guilty, by his own confession or otherwise, without the existence of some special causes to induce it.

And for other cases where the court will bail or not. See 1 Salk. 61. 5 Mod 454 Kel 90, Dyer, 79.

See Joshua De Graff's case, ante, Trask's case 15 Mass. Rep. 277. Col. Burr's Trial, by Carpenter. Selfridge's Trial, p. 8.

The State v. Burrows, Kirby's Rep. 459. and the cases before cited.

" There are several cases in which persons charged with manslaughter have been bailed where there has been no presumption of innocence. Thus, in Rex v. Dalton, 2 Stra. 911. the defendant was committed on a coroner's inquest for manslaughter, and was brought before Lord Raymond, chief justice, on *habeas corpus*, at his chambers. He held, that if the depositions show that the offence was murder, he would not bail ; but it amounted only to manslaughter, he would bail ; and he bailed the prisoner. So also, in Rex v. Magrath, 2 Stra. 1242, the defendant was committed for manslaughter, and it appearing to be no more upon the depositions taken before the coroner, the Court of King's bench admitted him to bail. In Lord Mohun's case, which was before Lord Holt, at Chambers, 1 Salk. 104., he held, that if a man be found guilty of murder by the coroner's inquest, he is sometimes bailed, because the coroner proceeds upon the depositions taken in writing, which may be looked into ; otherwise, if a man be found guilty of murder by a grand jury then the court cannot take notice of their evidence, which they are bound to conceal ; and it appears by the cases before cited from Strange, that Lord Mohun, was bailed by Holt, and afterwards by the Lords, after an indictment for murder.

" In some late cases bail has been refused when the offence was a felony punishable with transportation ; as, in 2 D. & E. 76. and 3 East, 157.; and there is therefore no fixed or certain rule in cases of felony, each particular case depending upon its peculiar circumstances. The object and end of punishment before trial and conviction is to secure the forthcoming of a person charged with the com-

mission of a crime; and it is never intended as any part of <span>NEW-YORK,</span> the punishment; for until the guilt of the party be legally ascertained there is no ground for punishment, and it would be cruel and unjust to inflict it. The laws of every free government estimate personal liberty as of the most sacred character, and it ought not to be violated or abridged before trial ; but in cases where there are strong presumptions of guilt, and although the nature and kind of punishment which awaits those whose guilt if legally established, does not alter the turpitude of the offence, it must enter into the consideration of the question of bail ; for if the punishment would be a pecuniary infliction, then bail, if more than the amount of the probable fine, answers every purpose : if the punishment be death or corporal imprisonment, a consciousness of guilt would probably induce to flight, and an evasion of the punishment; and in admitting to bail, therefore, regard must be had to the probable guilt of the party, and the nature of the punishment demanded.

"It appears to me, that from the facts before me, the conclusion is inevitable, that it is quite doubtful whether the prisoner is guilty; and I think it stands indifferent whether he is or not. After a long and laborous trial, the jury have not been able to agree, and what proportion of them were for convicting, and what for acquitting, has not been shown. No inference can be drawn from the fact that the foreman pronounced a verdict which was dissented from by the third juror, that all the other jurors were for convicting the prisoner : and it may well be that a bare majority of the jury agreed to the verdict as assumed by the foreman. I perceive that all the jurors viewed the case as of a mitigated character, by their recommendation of the prisoner to mercy. I must presume that the jurors were impartial, and that their final disagreement proceeded from

NEW-YORK, a conscientious difference in opinion as to the prisoner's guilt ; and I am therefore bound to conclude that the prisoner may be innocent of the offence. In such a case, as I understand the law, he is entitled to be bailed, if he can give it in amount, and by persons of sufficient ability, affording a reasonable expectation, from the impending forfeiture of the recognizance that he will appear and stand trial.

" It was urged, that the adoption of such a principle would, in its operation, induce to the bailing of such persons as were either affluent themselves, or had rich influential friends ; whilst it would leave those who were poor and friendless in prison. Such may be the consequence, but it by no means proves the impropriety of the procedure. The rule is adapted to all who can comply with its terms ; and it is the misfortune of those who cannot give the necessary security. In arrest for debt, bail must be given, or imprisonment is the consequence : and although we may regret the inability to give it, we nevertheless approve of the law requiring the security.

" On the whole, I think this is a case in which it would be a discreet and sound exercise of the powers with which I am invested to admit the prisoner to bail."

Bail was given, and the prisoner discharged.